[Civ. No. 19824.   First Dist., Div. Two.   Jan. 15, 1962.]

THEODORE BARRON, Plaintiff and Appellant, v. ROB-
ERT L. TATTENHAM, Defendant; ALIX TATTEN-
HAM, Intervener and Respondent.

Tarbox & Jue for Plaintiff and Appellant.

James W. Funsten for Intervener and Respondent.

SHOEMAKER, J.—This is an appeal by plaintiff Theodore Barron from a judgment holding that an alimony and child support lien of intervener Alix Tattenham was prior and superior to plaintiff's attachment lien.

The facts are undisputed. On November 23, 1959, intervener Alix Tattenham was awarded an interlocutory decree of divorce from Robert Tattenham, said decree providing that Robert Tattenham pay Alix Tattenham $1.00 per month alimony and $55 per month for the support and maintenance of each of the parties' two children. Robert Tattenham failed to make the payments as ordered and Alix Tattenham applied to the court for an order appointing a receiver. The court found that Robert Tattenham had abandoned his regular employment to move permanently to Europe, and that he was in arrears in the payment of child support. The court also found that he was the owner of an interest in certain real property known as 1135 Monterey Boulevard, San Francisco, which was about to be sold. Therefore, on March 18, 1960, the court appointed a receiver to take possession of the proceeds of the pending sale and to pay child support and alimony from these proceeds as the payments became due.

On April 1, 1960, plaintiff Theodore Barron commenced the instant action against Robert Tattenham in the Municipal Court of San Francisco, to recover the sum of $1,450 plus interest, alleging that on February 5, 1960, he had made a loan in this amount to Robert Tattenham. Immediately upon filing his complaint, plaintiff obtained a writ of attachment and on April 5, 1960, levied upon the property known as 1135 Monterey Boulevard, San Francisco.

On April 13, 1960, Alix Tattenham was granted permission to intervene, and she thereupon cross-complained for a declaratory judgment that her alimony and support lien was superior to the attachment lien of appellant. Alix Tattenham also moved for an order transferring the action to the superior court on the ground that her cross-complaint for declaratory relief could be heard only in the superior court. Upon the

denial of this motion by the municipal court, intervener Alix Tattenham petitioned the superior court for a writ of prohibition and mandate ordering the action transferred. The writs prayed for were granted and the action was transferred to the superior court.

The cause then proceeded to trial in the superior court. Plaintiff Theodore Barron, although duly apprised of the trial date, chose not to appear at the trial, asserting that the trial-setting procedure was not correct, but that if judgment was taken, he would appeal. Alix Tattenham duly proceeded with her action, and the trial court entered judgment that Alix Tattenham's alimony and child support lien was superior to plaintiff's attachment lien.

Appellant urges two grounds for reversal: (1) that the superior court did not have jurisdiction of the action; and (2) that the evidence was insufficient to support the finding that respondent's alimony and child support lien was superior to appellant's attachment lien. Respondent maintains that appellant is foreclosed from raising the jurisdictional point on appeal because he failed to appeal from the order granting the writ of mandate and transferring the action to the higher court. We agree with respondent. ■ The merits of an order may not be considered on appeal from the final judgment if the order itself was appealable and this remedy was not exhausted. (See *Brun* v. *Evans* (1926) 80 Cal.App. 74 [251 P. 330], where defendants failed to appeal from an order denying a change of venue, and the court therefore refused to review the order on appeal from the judgment.) In *Muller* v. *Reagh* (1957) 150 Cal.App.2d 99, 103 [309 P.2d 826], the court held that an order transferring a cause from one court to another, at least when predicated upon lack of jurisdiction in the former court and possession of jurisdiction in the latter, was clearly an appealable order. Since appellant was thus entitled to appeal from the order granting mandate and transferring the cause to the superior court, his failure to pursue this remedy has foreclosed him from arguing the merits of the order on appeal from the final judgment.

Even if appellant were entitled to raise the jurisdictional point on this appeal, it is clear to us from the record that the transfer to the superior court was entirely proper.

Appellant's final contention is that the evidence was insufficient to support the judgment that respondent's alimony and child support lien was superior to appellant's attachment lien. ■ We take it that appellant's position is that no lien was

placed upon the property or the proceeds thereof by the court order appointing a receiver to enforce the alimony and support payments. Such a contention is without merit. In *Estate of Smith* (1927) 200 Cal. 654 [254 P. 567], plaintiff wife had been awarded $50 per month as child support. She subsequently applied to the trial court to have defendant husband adjudged guilty of contempt for his failure to make the required payments. The trial court, upon finding that the defendant was in arrears in his payments, ordered a bank wherein defendant had deposited a trust deed to hold the trust deed as security for the payments and to pay over the proceeds as the child support. On appeal, the sole question before the court was whether the court order alone was sufficient to create a valid lien upon the trust deed. The court stated, at pages 658-659 : ''It was unquestionably within the power of the court under said section 140 of the Civil Code to make said order, and it is just as certain that by such order the court created a lien against the property in the hands of the bank to secure the payment of the amounts due and to become due for the maintenance of the minor. . . . In our opinion there is no question but that by the order of the court a lien was created on the securities in the hands of the bank. . . .''

Appellant concedes that the order appointing the receiver was made on March 18, 1960, and that appellant's attachment lien was not effected until April 5, 1960. Appellant maintains, however, that he had no notice, actual or constructive, of the existence of the prior lien. Appellant therefore contends that respondent's lien must be viewed as a secret charge and thus inferior to appellant's subsequent attachment lien. This argument is specious. ██ The rule is well established that an attaching creditor who gives no new value has none of the characteristics of a bona fide purchaser. He stands in the shoes of the debtor, and his lien attaches only to the debtor's interest at the time of the levy. (*Pintel* v. *K.N.H. Mohamed & Brothers* (1951) 107 Cal.App.2d 328, 330-331 [237 P.2d 315].) In the case at bar, appellant attached the real property in question in order to secure repayment of a loan made to the defendant on February 5, 1960. Since appellant may not be viewed as a bona fide purchaser having given new value, his lien attached only to the interest of Robert Tattenham at the date of the levy. ██ The interest of Robert Tattenham was already subject to the court-created lien in favor of respondent, and appellant's attachment lien was subject to respondent's prior alimony and child support lien, whether recorded or not.

132

Even if the appointment of the receiver created only an equitable lien in favor of respondent, the same rule must prevail. (See *Burns* v. *Peters* (1936) 5 Cal.2d 619, 625 [55 P.2d 1182], where the court held that a prior unrecorded equitable lien takes precedence over a subsequent attachment.)

We have before us also a motion to dismiss appeal which, in view of our disposition of this case upon the merits, is denied.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.